## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSHUA MYERS,<br><br>        *Plaintiff*,<br><br>   v.<br><br>GLOBAL RESOURCES AND SUPPORT, LLC,<br>*et al.*,<br><br>        *Defendants*. | No. 22-cv-00032 (DLF) |

## <u>MEMORANDUM OPINION</u>

Joshua Myers brings this action for unpaid wages against Global Resources and Support, LLC (GRS), Tonya Coppin, Harold Fox, Jr., and Janette Headley. Sec. Am. Compl., Dkt. 24. Myers alleges violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, the District of Columbia Payment and Collection of Wages Law (DCPCWL), D.C. Code §§ 32-1301, *et seq.*, the District of Columbia Accrued Sick and Safe Leave Act of 2008 (DCASSLA), D.C. Code §§ 32-531.01, *et seq.*, and the District of Columbia Minimum Wage Revision Act (DCMWRA), D.C. Code §§ 32-1001, *et seq.* Sec. Am. Compl. at 1. Before the Court are the defendants' Motion for Summary Judgment and for Partial Summary Judgment, Dkt. 43, and the plaintiff's Cross-Motion for Partial Summary Judgment, Dkt. 46. For the following reasons, the Court will deny the defendants' motion and grant the plaintiff's motion in part and deny it in part.

## I.    BACKGROUND

The following facts are undisputed. GRS is a for-profit company that provides "vocational and residential supports to adults living with intellectual and developmental disabilities." Pl.'s Statement of Facts (PSOF) ¶ 2, Dkt. 46-2. In exchange for providing these services, GRS is paid by Medicaid through a waiver program with the District of Columbia Department of Disability

Services (DDS). *Id.* ¶¶ 3–7. Among GRS's dozens of employees, Direct Support Professionals (DSPs) are at the "lowest level" of the organizational structure and are "responsible for providing the hands-on care and support to GRS clients." *Id.* ¶ 12. DSPs take clients to activities and supervise them in the community. *Id.* ¶ 14. Employment Specialists assist clients with finding employment. *Id.* ¶¶ 16–17, 81. Program Managers sit directly above the DSPs and assume the role of a DSP "on an as-needed basis." *Id.* ¶¶ 19–20. A "multi-level management team" sits atop the business, with Coppin serving as CEO and other individuals serving as functional managers. *Id.* ¶ 21. Fox, Coppin's husband, "has held various managerial positions." *Id.* ¶ 22.

In October 2016, Myers was hired by GRS as a DSP, a non-exempt position paying an hourly wage. *Id.* ¶¶ 41, 43–44. In November 2016, he was promoted to Program Manager, an exempt position that paid an annual salary of $38,000 and later $48,000. *Id.* ¶ 45–49. And in October 2020, Myers became an Employment Specialist, an exempt position in which he earned an annual salary of $48,000. *Id.* ¶¶ 76–77. Headley, Coppin's mother, was Myers's direct supervisor when he was an Employment Specialist. *Id.* ¶¶ 22, 79. Myers's employment with GRS ended in January 2022. *Id.* ¶ 85.

Myers filed this suit in January 2022 alleging that the defendants had misclassified him as an exempt employee and failed to pay him overtime wages and certain other payments. After discovery, the defendants moved for summary judgment. Attached to their motion is a scant statement of material facts as to which, in the defendants' view, there is no genuine dispute. Defs.' Statements of Facts, Dkt. 43. In his joint motion for partial summary judgment and opposition, the plaintiff included his own statement of undisputed material facts in support of his motion, Dkt. 46-2, and a statement of material facts in dispute in response to the defendants' motion, Dkt. 48-1. In violation of Local Rule 7(h) and this Court's standing order, the defendants failed to respond to

both (1) the plaintiff's statement of undisputed material facts and (2) the "additional factual allegations" made in the plaintiff's opposition. *See* Standard Order for Civil Cases at 4–5, Dkt. 3. The defendants also failed to list all material facts in their initial statement of facts, *see* Dkt 48-1 at 1 n.1 (plaintiff pointing out these omissions and identifying the facts), *and* failed to include a statement of new material facts used in their opposition brief, *see* Dkt. 58 (same), all of which leaves the plaintiff, and the Court, scouring the record, which the Court declines to do, *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) ("Where a party fails . . . to file a proper statement of material facts in dispute pursuant to a local rule, the circuits are in agreement that the district court is under no obligation to sift through the record, which often contains voluminous deposition transcripts, interrogatory responses, and document productions, in order to evaluate the merits of that party's case."). The Court "may treat as conceded any facts asserted" in the plaintiff's statements of facts to which the defendants failed to respond in a "responsive statement of [their] own."[1] Standard Order at 5; *see Jackson*, 101 F.3d at 154. Accordingly, the Court will adopt the plaintiff's facts, unless disputed by the facts listed in the defendants' initial statement of facts.

## II.    LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby*

---

[1] In addition to failing to comply with Local Rule 7(h) and this Court's Standing Order, the defendants' briefing is replete with inaccuracies and errors. *See, e.g.*, Defs.' Mot. for Summ. J. at 22 (citing a case from this district with the governing legal test by the wrong name and incorrectly stating that it was issued by the "D.C. Court of Appeals"); Defs.' Reply & Opp'n at 5–6, Dkt. 55 (omitting citations to three cases and misidentifying the court that issued an opinion); *see also infra* at 6–7 nn.3–4.

3

*Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) (citation modified).

## III.    ANALYSIS

### A.    FLSA Exemptions

The FLSA requires employers to compensate employees for overtime work at an increased rate, 29 U.S.C. § 207(a)(1), unless the employee falls within a defined exemption, *id.* § 213(a). The FLSA exempts, among others, "any employee employed in a bona fide executive [or] administrative . . . capacity." *Id.* "[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974).[2]

In their motion for summary judgment, the defendants argue that Myers was an administrative employee and thus exempt from overtime protections. Defs.' Mot. for Summ. J. at 4–19. For his part, Myers argues that he was *not* exempt under either the administrative or the executive exemption. Pl.'s Cross-Mot. for Partial Summ. J. at 14–28. The Court will address each exemption in turn.

---

[2] The parties agree that the exemption analysis under the FLSA applies equally to the DCMWRA. *See* Defs.' Mot. for Summ. J. at 18–19; Pl.'s Cross-Mot. for Partial Summ. J. at 14; D.C. Code § 32-1004(a)(1).

1.    *Administrative Exemption*

As relevant here, an employee is employed in an administrative capacity if (1) his "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer" and (2) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). To meet the first prong, "an employee must perform work directly related to assisting with the running or servicing of the business." *Id.* § 541.201(a). Such work includes "functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." *Id.* § 541.201(b). Second, "[t]he exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision," though the work may still be "reviewed at a higher level." *Id.* § 541.202(c). Examples include the "authority to formulate, affect, interpret, or implement management policies or operating practices"; the "authority to commit the employer in matters that have significant financial impact"; and the "authority to waive or deviate from established policies and procedures without prior approval." *Id.* § 541.202(b).

Finally, "[t]he term 'primary duty' means the principal, main, major or most important duty that the employee performs." *Id.* § 541.700(a). "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the

employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* The amount of time spent on exempt versus non-exempt work alone is not dispositive, and "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.* § 541.700(b).

To support their argument that Myers worked in an administrative capacity, the defendants rely almost exclusively on his job descriptions and a declaration by Coppin.

As concerns his position as a Program Manager, the defendants contend that Myers's primary duties directly related to the management or general business operations of GRS because he conducted initial intake assessments of new clients; produced monthly and quarterly reports that set forth goals for those clients; ensured that subordinate DSPs completed their own daily reports; and managed departmental budgets. Defs.' Mot. for Summ. J. at 9; Defs.' Ex. A (Coppin Decl.) at 1, Dkt. 43. The defendants also rely on his job description: "The Program Manager plays a central role in the development and coordination of GRS programmatic activities."[3] Defs.' Mot. for Summ. J. at 9.

With regard to his role as an Employment Specialist, the defendants contend that Myers "[met] with the GRS clients to assess their needs" and "with potential employers" to "discuss the possibility of these clients ultimately being hired." *Id.* at 10. "Although GRS maintained a listing of potential employers who had a history of hiring GRS clients," the defendants assert that Myers

---

[3] In their briefs, the defendants assert that Myers "supervised and supported" 10 to 20 DSPs as a Program Manager—without citing to any record evidence. Defs.' Reply & Opp'n at 2. They also contend that Myers "testified in his deposition that his role as Program Manager involved" *eleven* different duties, such as "training staff," "approving timesheets," and "interview[ing] prospective employees." *Id.* at 7. But, as Myers points out, the cited deposition excerpts mention just *two* of those eleven duties. Pl.'s Statement of Material Facts in Dispute as to New Facts Raised in Defs.' Opp'n at 5–6, Dkt. 58; *see* Defs.' Ex. F (Pl.'s Deposition Excerpts), Dkt. 55.

"often had to identify alternative potential employers." *Id.* They also contend that he authored monthly and quarterly reports about his clients' progress, which DDS required for payment. *Id.*; Coppin Decl. at 2.

Turning to Myers's exercise of discretion and independent judgment, the defendants again rely on the job descriptions and Coppin's declaration. They list six "Essential Functions" written in the Program Manger job description that they contend "afforded [Myers] a considerable amount of autonomy regarding his duties and responsibilities," including responsibility "for developing and effectively managing program timelines." Defs.' Mot. for Summ. J. at 12–13. The defendants note that many of the listed responsibilities "begin with words such as, 'leads,' 'guides,' 'works with,' 'collaborates,' 'oversees,' 'designs and implements,' 'manages,' and 'adheres to.'" *Id.* at 13. As concerns Myers's role as an Employment Specialist, the defendants again point to "numerous duties" listed in the job description, like "[p]romoting a therapeutic environment," drafting monthly and quarterly reports, providing clients with training and development, and identifying alternate employers.[4] *Id.* at 15; Defs.' Reply & Opp'n at 15, Dkt. 55. According to the defendants, it "would be impossible for [Myers] to perform his job functions in light of this terminology in a manner that does not require him to exercise discretion and independent judgment." Defs.' Mot. for Summ. J. at 13.

Myers disagrees with the defendants' characterization of both his primary duties and the extent of his discretion and independent judgment. First, he asserts that as a Program Manager he spent most of his time continuing to function as a DSP by providing direct support to GRS clients

---

[4] The Court does not credit conclusory statements by the defendants that are unmoored from record evidence. *See, e.g.*, Defs.' Reply & Opp'n at 11 (posing a speculative question divorced from the record—"How could he have submitted these reports to Coppin for review if he was at home late at night?"—to rebut Myers's assertion that he was required to submit draft reports to his supervisors).

(*e.g.*, taking clients to arts and crafts activities or to Dave & Buster's), which the parties agree is non-exempt work, and only 20% of his time supervising other DSPs.  Pl.'s Statement of Material Facts in Dispute at 8, 11, Dkt. 48-1; PSOF ¶ 50; *see also* Defs.' Mot. for Summ. J. at 8.  He was involved in the intake process only "1-2 times per month," which was "limited to conducting a short interview," using a form questionnaire, and recording information.  Pl.'s Statement of Material Facts in Dispute at 9.  And he was "not involved" in the additional assessments performed for clients by other members of GRS staff, like psychological and nutritional evaluations.  *Id.*

As to discretion and independent judgment, Myers strongly disputes the defendants' characterization of his work.  The reports Myers filled out all use "the same standard DDS template form."  PSOF ¶ 32.  They are "short and straightforward" and "do not require any special expertise, nor do they involve the exercise of judgment and/or independent discretion on matters of significance."  *Id.* ¶ 34.  Other reports Myers filled out (*e.g.*, schedules and activity calendars) similarly involve no discretion.  *Id.* ¶¶ 35–36.  And one of his supervisors "would have to review and approve the reports" Myers prepared because he was not a "Qualified Intellectual Disability Provider."  *Id.* ¶ 37.  Myers was also never "responsible for preparing or submitting invoices" to DDS, did "not create employee policies and procedures," and was not "involved in formulating GRS's operating procedures or determining long or short-range business objectives."  *Id.* ¶¶ 87–88.

Furthermore, "[a]t no time during his employment could [Myers] deviate from GRS's established operating procedures without first receiving approval from Coppin, or another member of the executive team."  *Id.* ¶ 89; *see also id.* ¶ 105.  He was "subject to at least two, and sometimes three, levels of managerial oversight" and "was required to operate within GRS's narrowly circumscribed policies and procedures" set forth in the company manual.  *Id.* ¶ 96.  Myers was not

involved in formulating GRS's marketing strategy, "never had any involvement in setting GRS's annual budget," and had no authority to spend GRS funds without express permission from a supervisor. *Id.* ¶¶ 90–92. As a Program Manager, Myers "sometimes made decisions about," for example, "which activities to take the clients to (*i.e.* bowling, the movies, the park, the library)" and "which restaurant to eat at." *Id.* ¶ 94. As an Employment Specialist, "the scope of [Myers's] decision-making was limited to using an existing GRS database to locate potential employers for clients, deciding which community resources to refer the client to for skill building, and recommending possible jobs to the clients based on their skill set." *Id.* ¶ 95.

On this record, the Court finds that there is a clear dispute of material fact regarding the extent of Myers's ability to exercise discretion and independent judgment in both of his roles.[5] While the parties paint starkly different pictures of Myers's authority, the defendants offer few concrete facts to rebut the plaintiff's extensive statements of facts and appended record evidence to support his overtime claims. Even so, the defendants have succeeded—just barely—in clearing the bar to prevent the Court from ruling in the plaintiff's favor as to the administrative exemption.

    2.    *Executive Exemption*

As relevant here, an employee is employed in an executive capacity if (1) his "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (2) he "customarily and regularly directs the work of two or more other employees"; and (3) he "has the authority to hire or fire other employees or [his] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

---

[5] In addition, for the reasons noted above, *see supra* at 7–8, there also appears to be a dispute as to the material facts concerning Myers's primary duty, at least with regard to his Program Manager role.

Because the defendants' opposition fails to respond to the plaintiff's statements of facts, the Court will accept the plaintiff's statements as true, *see* PSOF; Pl.'s Statement of Material Facts in Dispute as to New Facts Raised in Defs.' Opp'n, Dkt. 58. In addition, the defendants' briefing makes no effort to argue that the executive exemption should apply, focusing instead only on the administrative exemption. *See* Defs.' Reply & Opp'n at 1, 16.

The record fails to show that Myers worked in an executive capacity. There is no evidence that Myers's "primary duty" was the "management" of GRS itself or of a "customarily recognized department." Although the parties agree that Myers sometimes supervised individual DSPs as a Program Manager, PSOF ¶¶ 50–52, his department—known as the Day Program—was managed by higher-level Program Directors, Pl.'s Statement of Material Facts in Dispute as to New Facts Raised in Defs.' Opp'n at 2. And as an Employment Specialist, Myers never "supervise[d] any other GRS employees," PSOF ¶ 80, so the defendants will be unable to show that he "customarily and regularly direct[ed] the work of two or more other employees," 29 C.F.R. § 541.100(a)(3), during that time. In sum, the defendants fail to direct the Court to facts in the record demonstrating that they can prove all three prongs of this affirmative defense. Accordingly, the Court concludes that Myers does not fall under the FLSA's executive exemption.

### B.    Joint Liability

"To be liable for violations of the FLSA, the defendant must be an 'employer.'" *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 (D.D.C. 2010) (quoting 29 U.S.C. §§ 206–207). "The FLSA defines 'employer' as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279, 288 (D.D.C. 2015) (quoting 29 U.S.C. § 203(d)). This definition is "necessarily a broad one," *id.*, and courts "look to the 'economic reality' rather than technical common law concepts of agency," *Ventura*,

738 F. Supp. 2d at 5 (quoting *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001)).  In doing so, courts may consider several factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Ayala*, 82 F. Supp. 3d at 288 (quoting *Morrison*, 253 F.3d at 11).  "No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence."[6]  *Morrison*, 253 F.3d at 11.  On summary judgment, the court draws "all reasonable inferences in favor of the nonmoving party."  *Reeves*, 530 U.S. at 150.

In addition to suing the GRS entity, Myers sues Coppin, Fox, and Headley in their personal capacities, arguing that they were his "employers" under the FLSA and therefore jointly liable for any violations.  It is undisputed that Coppin, GRS's CEO, was Myers's employer under the FLSA. The defendants conceded as much during Coppin's deposition, *see* PSOF ¶ 107, and they do not contest this conclusion in their brief, *see* Defs.' Reply & Opp'n at 19–23 (discussing defendants Fox and Headley only).

As to Fox, there is a genuine dispute of material fact as to whether he was an employer. On the one hand, the defendants offer an affidavit from Fox that negates all four factors.  Fox states that he (1) "never had the power to hire, fire, suspend, or otherwise discipline [Myers]"; (2) "never had direct supervisory authority with respect to [Myers]" and "did not supervise and/or control

---

[6] The parties agree that the "employer" analysis under the FLSA is the same under the plaintiff's state law claims.  *See* Defs.' Mot. for Summ. J. at 22; Pl.'s Corrected Mem. in Support of Mot. for Partial Summ. J. at 28, Dkt. 51; *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 146 (D.D.C. 2011) ("[D]eterminations of employer or employee status under the FLSA apply equally under the District of Columbia wage laws.").  The Court's conclusions on this issue therefore apply to Myers's claims under state law.

[Myers's] work schedules or conditions of employment"; (3) "never had the authority to . . . set [Myers's] pay rates and/or manner of pay" or "the terms and conditions of [his] pay" or to "authorize payment of [his] wages"; and (4) "did not maintain employment records of GRS employees, including [Myers]." Defs.' Ex. B (Fox Decl.) at 1, Dkt. 43.

On the other hand, Myers disputes many of these facts with record evidence. He asserts that (1) Fox told him that he was a co-owner of GRS and had authority to fire at least some workers; (2) Fox held "various management titles" and "assigned tasks" to Myers; and (3) Fox had control over the payroll account, occasionally wrote and signed payroll checks, had control over GRS's corporate funds, and identified employees who had failed to submit certain reports in order to put holds on their pay. Pl.'s Statement of Material Facts in Dispute at 6–7. Finally, Myers notes that "Fox admitted in his responses to admissions that he was Plaintiff's 'employer,' as a matter of law, within the meaning of the FLSA." *Id.* at 5. Given these disputes of fact, the defendants fail to show that Fox was not an employer as a matter of law.

Turning to Headley, there is also a genuine dispute of material fact as to whether she was an employer. Relying on a nearly identical affidavit from Headley, the defendants admit that she was Myers's "immediate supervisor" starting in October 2020 in the Employer Services division. Defs.' Ex. C (Headley Decl.) at 1, Dkt. 43. But Headley disclaims any authority to "hire, fire or suspend" Myers, to "set the terms and conditions" of his pay, or to "determine the rate and method" of his pay. *Id.* She also states that she "did not maintain [Myers's] employment records." *Id.*

Myers again disputes these facts. He alleges that "Headley had authority to make personnel changes" and "to fire employees" and that she made "the decision to demote" Myers. Pl.'s Statement of Material Facts in Dispute at 7. Headley told Myers that he worked for her and not GRS. *Id.* She also had the ability to discipline him—which she did in June 2020, even before

Myers started working directly for her—to the detriment of his ability to receive pay raises or promotions. *Id.*  Furthermore, Headley maintained Myers's time records on her computer and phone, kept track of his work hours, and had the authority to authorize him to work more than 40 hours a week.  *Id.* at 13.  Finally, as with Fox, Myers notes that Headley admitted that she was his employer under the FLSA in her discovery responses.  *Id.*  Given these material factual disputes, the Court cannot conclude that Headley was not Myers's employer.

### C.    Statute of Limitations

Under the FLSA, the statute of limitations is two years unless the violation is "willful," in which case the period increases to three years.  29 U.S.C. § 255(a).  A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

In their motion, the defendants argue that there is no evidence in the record that any violation was willful.  Defs.' Mot. for Summ. J. at 21.  The plaintiff disputes that contention and asserts the following facts: Coppin knew that non-exempt employees needed to be paid overtime; since 2017, the GRS employee handbook discussed the FLSA requirements; Coppin knew that whether Myers was exempt depended on the nature of his duties; Coppin knew that the DSP position was non-exempt and admitted that Myers continued to perform DSP duties even after GRS changed his classification to "exempt"; Coppin did not keep track of the time Myers spent on DSP duties; the defendants did not indicate in their personnel forms whether his position was classified as exempt; the defendants "performed no evaluation of the duties of any employee to determine whether they were in fact properly classified as exempt"; the defendants told Myers several times not to record more than 40 hours in the timekeeping system; and they knew that he was often working more than 40 hours per week.  Pl.'s Statement of Material Facts in Dispute at

4–5.  On this record, the Court concludes that whether any violation was willful is a disputed factual issue properly left for the jury.[7]

## CONCLUSION

For the foregoing reasons, the Court denies the defendants' Motion for Summary Judgment and for Partial Summary Judgment, Dkt. 43; grants in part the plaintiff's Cross-Motion for Partial Summary Judgment, Dkt. 46, as it relates to (1) the executive employee exemption and (2) Coppin's status as an employer; and denies in part the plaintiff's motion as it relates to the administrative employee exemption.  A separate order consistent with this decision accompanies this memorandum opinion.

September 30, 2025

_____
DABNEY L. FRIEDRICH
United States District Judge

---

[7] The FLSA's statute of limitations period is not determinative of liability here, and a different ruling on this issue would not end the case for at least two reasons.  First, the plaintiff filed his initial complaint in January 2022, so even a two-year limitations period would capture some of the alleged violations.  *See* Dkt. 1.  Second, the plaintiff argues that the statute of limitations under the D.C. wage laws is three years, with additional tolling provisions that will extend it to November 2016 in this case.  Pl.'s Statement of Material Facts in Dispute at 3–4.